IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>RENT-A-CENTER EAST, INC.,<br><br>    Defendant. | Civil Action No. 16-cv-2222<br><br>EQUITABLE RELIEF IS SOUGHT<br>JURY TRIAL DEMAND |

**COMPLAINT**

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Megan Kerr, an individual who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "EEOC") alleges that Defendant Rent-A-Center East, Inc. ("Defendant" or "Rent-A-Center") violated Title VII when it discharged Ms. Kerr because she is transgender.[1]

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of

---

[1] The EEOC brings to the court's attention the Seventh Circuit's decision in Ulane v. Eastern Airlines, which holds "that Title VII does not protect transsexuals." See 742 F.2d 1081, 1084 (1984). The EEOC certifies that the claim set forth in this Complaint is warranted by a nonfrivolous argument for reversing Ulane.

1

Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful acts alleged below were committed within the jurisdiction of the United States District Court for the Central District of Illinois, in the Urbana Division.

## PARTIES

3. Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has been a corporation doing business in Illinois.

5. At all relevant times, Defendant has had at least fifteen (15) employees.

6. Rent-A-Center is a rent-to-own retailer of furniture, electronics, appliances, and computers.

7. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-5(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

8. More than thirty (30) days prior to the institution of this lawsuit, a charge of discrimination (EEOC Charge No. 440-2015-01054) was filed with the EEOC, alleging that Defendant violated Title VII by, among other things, discharging Kerr because of her sex.

9. On February 18, 2016, the EEOC issued to Defendant a letter of determination finding that there is reasonable cause to believe that Defendant discriminated against Kerr because of her sex when it discharged her because she is transgender. The EEOC also invited

Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10. On March 8, 2016, Defendant informed the EEOC that it had not received the letter of determination, and so the EEOC transmitted another copy of the Letter of Determination to Respondent. Respondent received a copy of the letter of determination on March 8, 2016.

11. The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the letter of determination.

12. On March 29, 2016, the EEOC issued to Defendant a Notice of Failure of Conciliation.

13. All conditions precedent to the institution of this suit have been fulfilled.

## STATEMENT OF CLAIMS

14. Since at least July 2014, Rent-A-Center has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), when it discharged Megan Kerr because of her sex, specifically, because she is transgender and/or because of her gender transition:

   a) Kerr was employed by Rent-A-Center beginning in or around May 2005.

   b) From May 2011 until her discharge in July 2014, Kerr was an Assistant Manager at Rent-A-Center store no. 319, in Rantoul, Illinois ("Rantoul Store").

   c) Kerr is transgender. That is, her gender identity (female) is different from the sex she was designated at birth (male).

   d) Prior to March 2013, Kerr presented as male and had a traditionally male first name.

e)  In or around March 2013, Kerr informed her supervisor, Store Manager Russell Kasper, that she identifies as female, was transitioning to a female gender presentation, and that she was legally changing her first name to Megan.

f)  Throughout 2013 and 2014, Jason Carnahan was the District Manager who oversaw the Rantoul Store and was the immediate supervisor of the Rantoul Store's store manager.

g)  In 2013, shortly after Kerr informed Kasper of her gender transition, Kasper informed Carnahan.

h)  Carnahan informed Kasper that he disapproved of Kerr's gender transition, and Carnahan instructed Kasper to find a way to discharge Kerr or induce her to quit. Carnahan instructed Kasper to find infractions to document in order to create a basis for terminating Kerr's employment — that is, to create a pretext for discharging Kerr. Carnahan followed up with Kasper roughly weekly to check on the status of this effort to create a pretext for discharging Kerr.

i)  Kasper did not cooperate with Carnahan's instruction to manufacture a pretext for discharging Kerr.

j)  In December 2013, Rent-A-Center discharged Kasper.

k)  In or around February 2014, Rent-A-Center assigned Jason Morris to be the new store manager of the Rantoul Store.

l)  After becoming the store manager of the Rantoul Store, Morris told another employee that he was aware of Kerr's gender transition and,

because of that, Morris had not wanted to be assigned to the Rantoul Store.

m) Within a week or two of becoming the store manager, Morris changed Kerr's responsibilities so that she spent more time outside of the store, making deliveries.

n) In or around 2014, the Rantoul Store occasionally made deliveries to or provided other services to or in connection with local civic or charitable organizations or events, as a service to the community. This occasionally included delivering merchandise on a Sunday, when the store was normally closed and normally did not make deliveries.

o) On Saturday, July 19, 2014, Kerr asked Morris for the keys to a company delivery vehicle and permission to make a delivery the next day, on Sunday, July 20, 2014, to deliver furniture in connection with a project of a local civic organization.

p) Morris granted Kerr permission to make the July 20, 2014 delivery.

q) Kerr made the July 20, 2014 delivery, as planned.

r) On July 20, 2014, Morris drove to the Rantoul Store and took a picture of the parking lot, to document that Kerr's personal vehicle was parked there and that one of the store delivery vehicles was not in the lot. Morris also brought another employee with him on this visit, to serve as a witness.

s) On July 20, 2014, after documenting that the store delivery vehicle was not in the lot and that Kerr's personal vehicle was there instead, Morris telephoned Carnahan, the district manager, to tell him this.

    t)    That same day, July 20, 2014, Carnahan and Morris decided to discharge Kerr.

    u)    When Kerr arrived at work on Monday, July 21, 2014, Morris informed her that she had been discharged.

    v)    Rent-A-Center subsequently stated to the EEOC that Kerr was discharged because she used a company vehicle on a Sunday, when the store was closed, which Rent-A-Center said was a violation of company policy.

    w)    Rent-A-Center used Kerr's July 20, 2014 delivery as a pretext for discharging her.

    x)    Rent-A-Center discharged Kerr because the company and/or its managers disapproved of Kerr's gender transition and/or the fact that Kerr is transgender.

15. The effect of the practices complained of above has been to deprive Kerr of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

16. The unlawful employment practices complained of above were intentional.

17. The unlawful employment practices complained of above were done with malice or with reckless indifference to Kerr's federally protected rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate on the basis of sex, including transgender status;

B. Order Defendant to institute and carry out policies, practices and programs which provide and ensure equal employment opportunities for its employees regardless of sex and which eradicate the effects of its past and present unlawful practices;

C. Order Defendant to make Kerr whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including rightful-place reinstatement;

D. Order Defendant to make Kerr whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E. Order Defendant to make Kerr whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

F. Order Defendant to pay punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial;

G. Grant such further relief as the Court deems necessary and proper in the public interest; and

H. Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

| | |
|---|---|
| Date: July 18, 2016 | Respectfully submitted, |

P. DAVID. LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street, N.E.
Washington, D.C. 20507


JOHN C. HENDRICKSON
Regional Attorney

GREGORY M. GOCHANOUR
Supervisory Trial Attorney

 s/ Justin Mulaire
JUSTIN MULAIRE (lead counsel)
Trial Attorney

U.S. Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
(312) 869-8045
justin.mulaire@eeoc.gov